

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Fred T. Porter
County Attorney
Kaufman County
Kaufman, Texas

Dear Sir:

> Opinion No. 0-3461
> Re: Can the county legally issue
> warrants for the purpose of
> purchasing and erecting an
> airport?

Your recent request for an opinion of this department on the above stated question has been received.

We quote from your letter as follows:

"Under Art. 1269h of the Revised Civil Statutes, the Commissioner's Court of a County is given the authority to acquire land for the purpose of maintaining and operating an air port. Section 2 provides that for the purpose of purchasing such lands, the commissioners' Court may issue negotiable bonds of such county.

"The Commissioners Court of this County has asked me to obtain from you an opinion as to whether the County can legally issue warrants -- for the purpose of purchasing and erecting such airport under the terms of this statute. The statute does not expressly give such authority, but it is usually held that where a county is given authority to construct an improvement or make an expenditure, the authority to incur the debt and evidence the same by the issuance of interest-bearing time warrants is implied as a necessary incident thereto. See 11 Texas Juris. 663; Lasater vs. Lopez (Sup. Ct) 217 SW 373.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Fred T. Porter, Page 2

"I think it has been held that authorization to issue negotiable bonds does not remove the power of the county to issue time warrants and in this connection it will be noticed that the statute, section 2, says that the county may issue negotiable bonds. Keel vs. Pulte (Com. App) 10 SW (2nd) 694.

"Another case is that of Phoenix Mutual Life Ins. Co. vs. McAllen 82 Fed. (2nd) 381, wherein it is held that a city was not liable on vendor lien notes assumed by the City when purchasing land for use as an airport because the only negotiable paper on which a city could become liable for airport purposes would be bonds voted in accordance with the statute."

Article 1269h, Vernon's Annotated Civil Statutes, reads as follows:

"Sec. 1. That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire by purchase, without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an Air Port tracts of land, either within or without the corporate limits of such city and within the county in which such city is situated, the land acquired and held by any such city never to at any one time exceed six hundred forty acres, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county, not to exceed at any one time six hundred forty acres.

"Sec. 2. For the purpose of condemning or purchasing either or both, lands to be used and maintained as provided in Section 1 hereof, and improving and equipping the same for such use, the governing body of any city or the Commissioners' Court of any county, falling within the terms of such Section, may issue negotiable bonds of the city of of the county, as the case may be, and

levy taxes to provide for the interest and sinking funds of any such bonds so issued, the authority hereby given for the issuance of such bonds and levy and collection of such taxes to be exercised in accordance with the provisions of Chapter 1 of Title 22 of the Revised Civil Statutes of 1925.

"Sec. 3. An Air Port acquired under and by virtue of the terms of this Act (art. 1269h.) shall be under the management and control of the governing body of the city or the Commissioners' Court of the county acquiring the same, which is hereby expressly authorized and empowered to improve, maintain and conduct the same as an Air Port, and for that purpose to make and provide therein all necessary or fit improvements and facilities and to fix such reasonable charges for the use thereof as such governing body or Commissioners' Court shall deem fit, and to make rules and regulations governing the use thereof. All proceeds from such charges shall be devoted exclusively to the maintenance, up-keep, improvement and operation of such Air Port and the facilities, structures, and improvement therein, and no city or county shall be liable for injuries to persons resulting from or caused by any defective, unsound or unsafe condition of any such Air Port, or any part thereof, or thing of any character therein or resulting from or caused by any negligence, want of skill, or lack of care on the part of any governing Board or Commissioners' Court, officer, agent, servant or employee or other person with reference to the construction, improvement, management, conduct, or maintenance of any such Air Port or any structure, improvement, or thing of any character whatever, located therein or connected therewith.

"Sec. 4. That in addition to and exclusive of any taxes which may be levied for the interest and sinking fund of any bonds issued under the authority of this Act (Art. 1269h.) the governing body of any city or the Commissioners' Court

of any county, falling within the terms hereof, may and is hereby empowered to levy and collect a special tax not to exceed for any one year five cents on each One Hundred Dollars for the purpose of improving, operating, maintaining and conducting any Air Port which such city or county may acquire under the provision of this Act (Art. 1269h.), and to provide all suitable structures, and facilities therein. Provided that nothing in this Act (Art. 1269h.) shall be construed as authorizing any city or county to exceed the limits of indebtedness placed upon it under the Constitution."

The Commissioners' Court has the power to incur indebtedness, not only to the extent of the revenues of the county during the terms of office of such commissioners, but also to the extent of contracting away revenues which will be collected during many years, and to evidence the indebtedness by interest-bearing warrants. Unlike bonds, interest-bearing warrants may be issued without the authority of the taxpaying voters. The power conferred upon the Commissioners' Court to issue bonds in certain instances is an additional power; it does not annul the existing authority to issue non-negotiable county warrants for the same purpose. There is said to be no antagonism between the power of the Commissioners' Court to issue, within lawful limits, county warrants in payment of public improvements and the power to issue county bonds for such purposes. The two powers relate to making use of the county's credit in distinctly different ways and evidencing its debt by instruments of clearly different natures. In many cases it is possible for the Commissioners' Court to accomplish the desired improvement within the limits of the county's general power of taxation by a smaller expenditure than is ordinarily in view where a bond issue is proposed, and without the need of resorting to bonds. The use of warrants cannot, however, be availed of in order to circumvent the laws governing the issuance of county bonds. (Texas Jurisprudence, Vol. 11, page 663 and the authorities cited therein).

In the case of Adams, et al v. McGill, et al, 146 S. W. (2d) 332, among other things, it was held in effect that in determining the power of the county to issue

time warrants payable over a period of years for the construction of improvements on a county livestock and agricultural exhibition building, it could not be considered that there was an attempt to pay for the improvements by the issuance of bonds on the theory that after the issuance of time warrants, the warrants would be refunded by the issuance of negotiable bonds. Under the statute authorizing a county to provide for an annual exhibition of horticulture and agricultural products, but not expressly conferring power to issue time warrants to pay for the improvements constructed for such purpose, the county had "implied power" to issue time warrants payable over a period of years for the improvements on livestock and agricultural exhibit buildings. A county, subject to the express restrictions imposed by the Constitution and general laws, has power to issue time warrants in payment for improvements it is expressly authorized to construct, provided the applicable relations to the issuance of such warrants are observed.

In view of the foregoing authorities, the above stated question is respectfully answered in the affirmative. Provided, however, the county does not exceed the limits of indebtedness placed upon it under the Constitution.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:LM

APPROVED MAY 1, 1941

acting ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN